1 GREENSFELDER, HEMKER & GALE, P.C.
MARY ANN L. WYMORE (SBN 126516)
2 mlw@greensfelder.com
10 South Broadway, Suite 2000
3 St. Louis, Missouri 63102
Telephone: 314-516-2662
4 Facsimile: 314-345-5488

5 Attorneys for Defendant
RINGCENTRAL, INC.
6

7               IN THE UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                       OAKLAND DIVISION

10

11 SUPPLY PRO SORBENTS, LLC,            )   Case No. 16-cv-02113-JSW
                                        )
12         Plaintiff,                   )   **DEFENDANT RINGCENTRAL, INC.'S**
                                        )   **NOTICE OF MOTION AND MOTION**
13 v.                                   )   **TO DISMISS COMPLAINT; AND**
                                        )   **MEMORANDUM IN SUPPORT**
14 RINGCENTRAL, INC.,                   )
                                        )   Date:  October 7, 2016
15         Defendant.                   )   Time:  9:00 a.m.
                                        )   Ctrm:  5 – 2nd Floor
16                                      )   Judge: Honorable Jeffrey S. White

17

18

19

20

21

22

23

24

25

26

27

28

---

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 16-cv-02113-JSW

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  PLEASE TAKE NOTICE THAT on October 7, 2016, at 9:00 a.m. in Courtroom 5 – 2nd

3  Floor of the above-entitled court, located at the Oakland Courthouse, 1301 Clay Street, Oakland,

4  California, 94612, Defendant RingCentral, Inc. ("RingCentral" or "Defendant"), by its attorneys

5  Greensfelder, Hemker & Gale, P.C., will move and hereby moves, pursuant to Fed. R. Civ. P.

6  12(b)(1) and 12(b)(6), for an order dismissing Plaintiff's Complaint against Defendant with

7  prejudice.

8  This Motion is based upon this Notice of Motion and Memorandum of Points and

9  Authorities in support thereof, the Complaint and other pleadings on file in this matter, the

10  arguments of counsel, and all other material which may properly come before the Court at or

11  before the hearing on this Motion.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 16-cv-02113-JSW

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

SUMMARY OF THE ARGUMENT ................................................................................... vi

ISSUES TO BE DECIDED ................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 1

STANDARD OF REVIEW ................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

I.    Plaintiff Lacks Article III Standing .......................................................................... 3

    A.    Legal Requirements for Standing ........................................................... 3

    B.    Plaintiff Has No Concrete Injury In Fact Fairly Traceable to the Identifier........... 5

II.   RingCentral Is Not A "Sender" Under The TCPA ................................................. 9

III.  RingCentral's Identifiers Are Not  Unsolicited "Advertisements" Under The TCPA ................................................................................................................... 13

    A.    The TCPA Prohibits Only Unsolicited "Advertisements".................................. 13

    B.    The Identifier Is Not An "Advertisement" subject to the TCPA ......................... 18

V.    The Conversion Claim Alleged in Count II Fails As A Matter Of Law............................ 21

    A.    RingCentral Has Never Controlled Plaintiff's Property................................... 22

    B.    Plaintiff Has Not Suffered More Than Trivial Inconvenience Or Expense........................................................................................... 24

CONCLUSION ................................................................................................................. 25

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.*,
    95 Cal. App. 4th 1273 (Cal. Ct. App. 2002) ...................................................... 24

4

5

*Bais Yaakov v. Varitronics*, LLC,
    No. CIV. 14-5008 ADM/FLN, 2015 WL 1529279 (D. Minn. Apr. 3, 2015).................. 12

6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................. 2

7

*Branham v. Prewitt*,
    636 S.W.2d 507 (Tex. App. 1982)........................................................... vi, 22

8

9

*Bridgeview Health Care Ctr. v. Clark*,
    No. 09 C 5601, 2015 WL 1598115 (N.D. Ill. Apr. 8, 2015).......................... 13

10

*Bridgeview Health Care Ctr., Ltd. v. Clark*,
    816 F.3d 935 (7th Cir. 2016) ............................................................... 12, 13

11

12

*Brodsky v. Humanadental Ins. Co.,*
    No. 10–CV–3233, 2011 WL 529302 (N.D. Ill. Feb. 8, 2011) ......................... 25

13

*Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*,
    545 F. Supp. 2d 768 (N.D. Ill. 2008) ...................................................... 25

14

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
    598 F.3d 1115 (9th Cir. 2010) ...................................................................... 2

15

16

*Chevron, U.S.A. v. NRDC, Inc.*,
    467 U.S. 837 (1984)......................................................................... 14

17

*Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*,
    No. 8:13-CV-01592-AEP, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014)...................... 12

18

19

*Dolenz v. Nat'l Bank of Tex. at Fort Worth*,
    649 S.W.2d 368 (Tex. App. 1983).......................................................... 23

20

*Edwards v. Emperor's Garden Rest.*,
    130 P.3d 1280 (Nev. 2006)............................................................. 25

21

22

*Habecker v. Town of Estes Park, Colo.*,
    518 F.3d 1217 (10th Cir. 2008) ......................................................... 5

23

*Hernandez v. Path, Inc.*,
    No. 12-CV-01515-YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012)........................... 8

24

25

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*,
    792 F.3d 627 (6th Cir. 2015) .............................................................. 6

26

*Ingraham v. Wright*,
    430 U.S. 651 (1977).................................................................... 8

27

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**
**CASE NO. 16-cv-02113-JSW**

*Izsak v. Draftkings, Inc.*,
No. 14-cv-07952, 2016 WL 3227299 (June 13, 2016) ..................................................... 24

*Jones v. Copeland*,
No. 07-11-00437-CV, 2012 WL 3536764 (Tex. App. Aug. 16, 2012) ........................... 24

*Kullman v. Greenebaum*,
28 P. 674 (Cal. 1891) ...................................................................................................... 24

*LaCourt v. Specific Media, Inc.*,
No. SACV 10–1256–GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ............ 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................... passim

*Lutz Appellate Servs., Inc. v. Curry*,
859 F. Supp. 180 (E.D. Pa. 1994) ............................................................................ 14, 15

*Moss v. U.S. Secret Service*,
572 F.3d 962 (9th Cir. 2009) .......................................................................................... 18

*N.B. Indus. v. Wells Fargo & Co.*,
No. C 10-03203 LB, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) ....................... passim

*N.B. Indus., Inc. v. Wells Fargo & Co.*,
465 F. App'x 640 (9th Cir. 2012) ............................................................................. passim

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
663 F. Supp. 2d 863 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012)................. 5, 6

*Neurocare Inst. of C. Florida, P.A. v. Healthtap, Inc.*,
8 F. Supp. 3d 1362 (M.D. Fla. 2014) .............................................................................. 25

*Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*,
No. 11–cv–6959, 2012 WL 638765 (N.D. Ill. Feb. 23, 2012) .................................. vi, 25

*P&S Printing LLC v. Tubelite, Inc.*,
No. 3:14-CV-1441 VAB, 2015 WL 4425793 (D. Conn. July 17, 2015)........ 14, 17, 18, 20

*Palm Beach Golf Ctr.–Boca, Inc. v. Sarris*,
781 F.3d 1245 (11th Cir. 2015) ..................................................................... vi, 6, 10, 11

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
150 Cal. App. 4th 384 (Cal. Ct. App. 2007) ............................................................. 21, 22

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
No. 12-2132 (FLW), 2013 WL 486207 (D.N.J. Feb. 6, 2013) ................................. 14, 15

*Republic of Arg. v. Weltover, Inc.*,
504 U.S. 607 (1992)........................................................................................................... 8

*Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns*,
443 F. Supp.2d 976 (N.D. Ill. 2006) ......................................................................... 23, 25

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 16-cv-02113-JSW

*Siding and Insulation Co. v. Alco Vending, Inc.*,
    --- F.3d ---, 2016 WL 2620507 (6th Cir. May 9, 2016) ................................................ 12

*Simmonds Equip., LLC v. GGR Intern., Inc.*,
    126 F. Supp. 3d 855 (S.D. Tex. 2015) ..................................................................... 23

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
    506 F.3d 832 (9th Cir. 2007) ...................................................................... 7, 8, 24

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ............................................................................................. 14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .................................................................................. passim

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................................. 3

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*,
    633 F. Supp. 2d 610 (N.D. Ill. 2009) ..................................................................... 25

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................................... 4

*Texas v. Am. Blastfax, Inc.*,
    164 F. Supp. 2d 892 (W.D. Tex. 2001) ............................................................ passim

*Thawar v. 7-Eleven, Inc.*,
    No. 3:15-CV-2675-B, 2016 WL 775848 (N.D. Tex. Feb. 29, 2016) ............................ 23

*Thomas Jefferson Univ. v. Shalala*,
    512 U.S. 504 (1994) ............................................................................................. 12

*U.S. v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .................................................................................. 3

*Van Buskirk v. CNN*,
    284 F.3d 977 (9th Cir. 2002) .................................................................................. 3

*Waisath v. Lack's Stores, Inc.*,
    474 S.W.2d 444 (Tex. 1971) .................................................................................. 21

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................... 4

*Wells Fargo Bank Northwest, N.A. v. RPK Capital XVI, L.L.C.*,
    360 S.W.3d 691 (Tex. App. 2012) ............................................................ 3, 16, 17, 21

*Wise v. SR Dallas, LLC*,
    436 S.W.3d 402 (Tex. App. 2014) .......................................................................... 21

*Young v. Huddleston*,
    No. CIV.A. 6:05CV348, 2006 WL 722135 (E.D. Tex. Mar. 22, 2006) ......................... 24

iv

**Other Authorities**

2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2] (3d ed.1999)............................ 3

H.R. Rep. No. 317, 102d Cong., 1st Sess. 25 (1991).............................................. 11, 13

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC, 10 FCC Rcd. 12391 (1995) .................................................. 10, 11

*In re Rules and Regulations,* FCC, 21 FCC Rcd. 3787 (Apr. 5, 2006) .................................. vi, 11

*Letter from FCC, to John Ley, Clerk of Court*, No. 13-14013, 2014 WL 3734105, at *3 (July 17, 2014) ....................................................................................... vi, 11

Restatement (Second) Torts, § 222A ........................................................................ 24

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, FCC, 71 Fed. Reg. 25,967 (May 3, 2006)....... vi, 14, 15

**Rules**

47 C.F.R. § 64.1200 ............................................................................................... 11, 15

47 C.F.R. § 64.1200(f)(10) ......................................................................................... 11

Fed. R. Civ. P. 12(b)(1)........................................................................................... 2, 9

Fed. R. Civ. P. 12(b)(6)........................................................................................... 2, 3

Fed. R. Civ. P. 8(a)(2).............................................................................................. 2

**Code**

47 U.S.C. § 227(a)(5).................................................................................... 2, 14, 15

47 U.S.C. § 227(b)(1)(C) ............................................................................... 10, 14

47 U.S.C. § 227(b)(2) ........................................................................................... 14

Cal. Civ. Code § 3533 (West 2016)......................................................................... 24

v

## SUMMARY OF ARGUMENT

Plaintiff's Complaint suffers from four fatal flaws.  First, it fails to establish the requisite "concrete" injury for Article III standing traceable to RingCentral's conduct because regardless of whether RingCentral's customer attached a form cover sheet to its outgoing fax or created its own, the effect would be the same—Plaintiff would have received a four-page fax. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

Second, Plaintiff's TCPA claim fails because RingCentral is not the "sender" of the Subject Fax. Plaintiff's allegation that the Subject Fax was sent "on behalf of *one of RingCentral's users,*" not RingCentral, is fatal to its claim, as FCC guidance and legislative history of the TCPA demonstrates that the "sender" under the TCPA is the party "on whose behalf facsimiles are transmitted." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C. Rcd. 3787, 3808 (Apr. 5, 2006); *Letter from FCC, to John Ley, Clerk of Court*, No. 13-14013, 2014 WL 3734105, at *3 (July 17, 2014); *Palm Beach Golf Ctr.– Boca, Inc. v. Sarris*, 781 F.3d 1245, 1257 (11th Cir. 2015).

Third, Plaintiff's TCPA claim fails because the Identifier is not an "unsolicited advertisement" under the TCPA but instead is purely informational. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, FCC, 71 Fed. Reg. 25,967, 25,973 (May 3, 2006); *N.B. Indus. v. Wells Fargo & Co.*, No. C 10-03203 LB, 2010 WL 4939970, at *11 (N.D. Cal. Nov. 30, 2010), *aff'd sub nom.*, *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640 (9th Cir. 2012).  Moreover, the amount of space devoted to it—only 1/352 of the full fax—is so *de minimis* that it is "incidental" to the message as a whole. *See id.*

Finally, Plaintiff's conversion count is unsustainable because RingCentral did not control Plaintiff's property and any *de minimis* inconvenience and expense caused by receipt of a fax containing the Identifier is insufficient to constitute a conversion. *Branham v. Prewitt*, 636 S.W.2d 507, 510-11 (Tex. App. 1982); *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*, No. 11–cv–6959, 2012 WL 638765, at *2 (N.D. Ill. Feb. 23, 2012).

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUES TO BE DECIDED

1. Whether a footer appearing on an optional cover page of a customer's four-page fax, containing the RingCentral logo, web address and tagline, "Send and receive faxes with RingCentral" (the "Identifier"), is sufficient to establish the requisite "concrete" injury for Article III standing fairly traceable to RingCentral's conduct when regardless of whether RingCentral's customer attached a form cover sheet to its outgoing fax or created its own, Plaintiff would have received the fax.

2. Whether RingCentral is the "sender" under the TCPA of a four-page fax that was not sent by it or "on its behalf" simply because its customer used an optional fax cover page containing the Identifier.

3. Whether the Identifier is an "unsolicited advertisement" under the TCPA.

4. Whether RingCentral is liable for conversion based on its customer's transmission of a fax containing the Identifier, even though any inconvenience or expense caused by the Identifier—even if measurable—is *de minimis*, amounting to a fraction of pennies.

### FACTUAL BACKGROUND

RingCentral operates a cloud-based business communications service.  (Compl. ¶ 1.)  As part of that service, RingCentral provides its customers a system through which they may send and receive faxes. (Compl. ¶ 2.)  Plaintiff alleges that RingCentral makes available a variety of form fax cover sheets containing the Identifier that customers may, at their option, use with their outgoing faxes by checking a box in RingCentral's software or on RingCentral's web page. (Compl. ¶¶ 2, 16, 19-21; Ext. A and B to Compl.)

Plaintiff alleges that on or about April 13, 2016, it received from one of RingCentral's customers a four-page unsolicited advertisement that purportedly was transmitted via RingCentral's system (the "Subject Fax").  (Compl. ¶ 1, 14-15.)  Plaintiff attached only the first page of the Subject Fax to the Complaint – the fax cover sheet containing the customer's information plus the Identifier – and further alleged that the Identifier itself was an unsolicited

1   advertisement.  (Compl. ¶¶  14, 20; Ex. A to the Compl.)

2       Plaintiff seeks to hold RingCentral liable under the TCPA based solely on RingCentral's

3   act of making available to its customers the *option* to use a form fax cover sheet incidentally

4   containing the Identifier.  Plaintiff alleges that RingCentral violated the TCPA because it (1) did

5   not have Plaintiff's permission to transmit a cover sheet containing the Identifier, and (2) did not

6   have an established business relationship with Plaintiff.  (Compl. ¶¶ 23-25.)  Plaintiff also claims

7   that the cover sheet did not provide the requisite opt-out notice. (Id. at ¶ 18.)

8       The viability of Plaintiff's TCPA claim against RingCentral depends on whether the

9   Court has standing over Plaintiff's claim and, if so, whether RingCentral is the sender of the

10  Subject Fax and whether the Identifier constitutes an unsolicited advertisement.  The answer to

11  all three of these questions is "no."  Plaintiff's conversion claim similarly fails, as RingCentral

12  exercised no control over Plaintiff's property, and Plaintiff's injury is too *de minimis* to support

13  such a claim.  Thus, Plaintiff's Complaint should be dismissed in its entirety.

14                              **STANDARD OF REVIEW**

15      RingCentral brings this motion under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

16      A motion challenging a plaintiff's standing is properly brought under Rule 12(b)(1).

17  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  Standing

18  addresses whether the plaintiff is the proper party to bring a matter to the Court for adjudication.

19  *Id.* at 1122.  The plaintiff bears the burden of establishing each element of standing.  *Lujan v.*

20  *Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

21      The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint.  The

22  Court must accept a plaintiff's well pleaded allegations, draw all reasonable inferences in favor

23  of the plaintiff, and decide whether the plaintiff has set forth a plausible claim for relief.  *Bell Atl.*

24  *Corp. v. Twombly,* 550 U.S. 544, 555-56, 562-63 (2007).  Factual allegations, however, "must be

25  enough to raise a right to relief above the speculative level," and assert a cause of action with

26  "enough heft to 'sho[w] that the pleader is entitled to relief,'" and "enough facts to state a claim

27  to relief that is plausible on its face."  *Id.* at 545, 570.  The plausibility standard set forth in

28

2

*Twombly* obligates plaintiff to "provide the grounds of [its] entitlement to relief" through more than "labels and conclusions, [or] a formulaic recitation of the elements of [its] cause of action . . . ." *Id.* at 555 (citations omitted).   In evaluating a motion to dismiss under Rule 12(b)(6), the court may consider documents attached to the complaint. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (internal citation omitted).  The Court can resolve, as a matter of law at the pleading stage, whether the Subject Fax is an "advertisement" under the TCPA. *See e.g.*, *N.B. Indus. v. Wells Fargo & Co.*, No. C 10-03203 LB, 2010 WL 4939970, at *4 (N.D. Cal. Nov. 30, 2010) ("*N.B. Indus. I*"), *aff'd sub nom.*, *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640 (9th Cir. 2012) ("*N.B. Indus. II*").

## ARGUMENT

### I.   <u>Plaintiff Lacks Article III Standing.</u>

The Court must dismiss Plaintiff's Complaint for lack of subject matter jurisdiction because the Complaint fails to establish that Plaintiff suffered a concrete injury-in-fact that is fairly traceable to the Identifier. Plaintiff's claims involve the decision of RingCentral's *customer* to use an optional form fax cover page that included the Identifier (and allegedly lacked a RingCentral opt-out notice). The Identifier and lack of an opt-out on the cover sheet, Plaintiff claims, amounts to a TCPA violation and common law conversion by RingCentral.  The Complaint, however, fails to demonstrate how the alleged conduct actually caused it a "concrete" injury-in-fact as required for Article III standing.  Regardless of what cover sheet the customer chose to use, Plaintiff still would have received the Subject Fax from RingCentral's customer.

### A.   <u>Legal Requirements for Standing.</u>

"'[N]o principle is more fundamental to the judiciary's proper role'" than the requirement of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Without standing, this Court has no subject matter jurisdiction over Plaintiff's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "Without jurisdiction the court cannot proceed at all" and "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel*, 523 U.S. at 94.

Boiled to its "irreducible constitutional minimum," standing requires three elements: Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant "and not the result of the independent action of some third party not before the court," and (3) that is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560; *Spokeo*, 136 S. Ct. at 1547. As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing these elements. *Spokeo*, 136 S. Ct. at 1547. To do so, Plaintiff "must 'clearly allege facts demonstrating' each element." *Id*. (internal ellipses omitted; quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). At a minimum, Plaintiff's Complaint fails to establish the first two elements.

Of the three standing elements, the "first and foremost" is an injury-in-fact. *Id*. To have an injury-in-fact, Plaintiff must "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548. Each of these requirements must be independently assessed and satisfied. *Id*. Particularly relevant here is the requirement that Plaintiff allege facts clearly demonstrating a "concrete" injury.

In its recent *Spokeo* decision, the Supreme Court made clear that to establish an injury-in-fact, a plaintiff must allege more than a mere statutory violation. *Id*. at 1549 ("standing requires a concrete injury even in the context of a statutory violation"). This is because Congress cannot create an end run around the Constitution's "standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48. In other words, Plaintiff cannot establish an injury-in-fact from the Identifier by merely claiming that it violates the TCPA. *Spokeo* requires that a plaintiff must actually demonstrate a "concrete" injury from the violation. *Id*. at 1549. A violation that is "divorced from any concrete harm" is insufficient to confer standing. *Id*. To be concrete, the injury "must be 'de facto'; that is, it must actually exist" and must be "'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1549.

The second element of standing requires not just a concrete injury-in-fact, but "a causal connection between the injury and the conduct complained of"; that is, "the injury has to be

fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.  Although not quite the same as "proximate causation," it "does require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 878 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012).

### B.   Plaintiff Has No Concrete Injury-in-Fact Fairly Traceable to the Identifier.

Plaintiff's Complaint does not identify a concrete injury it suffered from the alleged violation (*i.e.* the inclusion of the Identifier and alleged lack of an opt-out). Plaintiff alleges only generalized harm it would have suffered regardless of the Identifier. In this way, the alleged violation is "divorced" from any harm.  *Spokeo*, 136 S. Ct. at 1549.

The Subject Fax is not from RingCentral, it is from Mr. Shahed Khan. (*See Compl.* at Ex. A.)  As Plaintiff concedes, RingCentral simply provides a cloud-based system through which" its customers can send and receive faxes over the Internet.  (*Compl.* at ¶ 2.).  Undeniably, the crux of Plaintiff's claims against RingCentral is based not on receipt of the Subject Fax as a whole, but rather on the mere presence of the Identifier on the optional cover sheet.  (*See, e.g.*, *Compl.* ¶¶ 1, 2, 26, 32(a)-(e).)  Importantly, Plaintiff does not allege that RingCentral required Mr. Khan to use one of its form cover sheets. Nor does Plaintiff allege that RingCentral prevented Mr. Khan from using a cover sheet that he (or any other person) created. In fact, Plaintiff acknowledges the opposite. Plaintiff alleges that RingCentral makes sample fax cover sheets available to its users, but that the "user can choose" and has "the option" to use them. (*Compl.* at ¶¶ 19, 21.)  The bottom line is that Plaintiff was going to receive a fax from Mr. Khan regardless of whether the cover sheet he chose was one that he created, one of RingCentral's form cover sheets, or was created by some other third party.  Indeed, Plaintiff would have received the fax even if Mr. Khan had transmitted it over a different fax transmission platform.

Thus, Mr. Khan's fax still allegedly would have used Plaintiff's "fax machine, paper, and toner" and taken up Plaintiff's "time that would have been spent on something else." (*Compl.* at ¶ 7.)  Whatever his choice of cover sheet, Mr. Khan's fax to Plaintiff allegedly would have

"tie[d] up the telephone lines, prevent[ed Plaintiff's] fax machine from receiving [or sending faxes]," caused "wear and tear" on Plaintiff's fax machine, and required the output of "labor" on the part of Plaintiff.  (*Compl*. at ¶ 7.)  Likewise, Plaintiff fails to allege how the customer's choice of cover sheet caused some concrete privacy interruption or a misappropriation of property by RingCentral.  (*Compl*. at ¶ 7, 58.)

Plaintiff similarly lacks standing to assert a claim based on the alleged lack of a RingCentral opt-out notice. While Plaintiff claims the lack of a RingCentral opt-out notice deprived it of "the necessary contact information to opt-out of future fax transmissions," (*Compl*. at ¶¶ 14, 48), Plaintiff fails to identify any *concrete* harm suffered as a result.  Indeed, it is inconceivable how Plaintiff could have suffered a concrete injury at the hands of RingCentral, when it does not allege to have received any faxes other than the single Subject Fax sent by a third party, not RingCentral.

As the only alleged harm is attributable to Mr. Khan's independent action in transmitting the Subject Fax to Plaintiff, Plaintiff also fails to establish the second element of standing: "a substantial likelihood that [RingCentral's] conduct caused plaintiff's injury" rather than the injury being the "result of the independent action of some third party not before the court." *Native Vill. of Kivalina*, 663 F. Supp. 2d at 878 (citing *Lujan*, 504 U.S. at 560).

The unique facts here distinguish this case from those in which courts have found a TCPA violation to confer standing.  In TCPA cases where Article III standing was found, the fax to the plaintiff was directly from the defendant or its agent such that, without the advertisement, there would have been nothing to send.  For example, in *Palm Beach Golf Ctr.–Boca, Inc. v. Sarris*, 781 F.3d 1245 (11th Cir. 2015) and *Imhoff Inv., L.L.C. v. Alfoccino, Inc*., 792 F.3d 627, 633 (6th Cir. 2015), the defendants had hired companies specifically to distribute fax advertisements. *Imhoff*, 792 F.3d at 630; *Palm Beach*, 781 F.3d at 1249.  Neither court was confronted with the situation here, in which the alleged "advertisement" anchoring the TCPA claim was included incidentally by a third party during the course of that third party sending its own message to Plaintiff.  Thus, any occupation of Plaintiff's fax line is not because of the

6

1   Identifier; but rather because of a third party's message that Plaintiff would have received

2   <u>regardless</u> of the Identifier.

3         Nor is it apparent how Plaintiff—if given a chance to amend—could conceivably identify

4   any concrete harm from the Identifier that rises to the level of a constitutionally cognizable

5   injury. Perhaps Plaintiff contends that the Identifier harmed Plaintiff by causing Plaintiff's fax

6   machine to use additional resources that would not have been used in the Identifier's absence.

7   What additional resources would those be?  Clearly not additional paper: The fax at issue would

8   have been four pages regardless of the Identifier.  Excessive use of Plaintiff's phone line?  But

9   the phone line would have been used to receive a four-page fax even if the Identifier were

10  omitted.  Maybe Plaintiff alleges that the Identifier used additional toner and electricity? But,

11  such an allegation would fail for two independent reasons. First, such an injury would rest

12  entirely upon conjecture. Second, even if Plaintiff could allege facts raising the injury above the

13  conjectural level, a claim based upon such an infinitesimally small injury would be too *de*

14  *minimis* to support a cognizable injury for Article III standing.

15        To be "concrete," harm "must be 'de facto'; that is, it must actually exist" rather than

16  being "conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548-49.  It would be pure conjecture

17  to suggest that, had Mr. Khan chosen to use a different cover sheet, the fax would have used less

18  toner or electricity. Assuming the Subject Fax was even sent to a traditional fax machine—as

19  opposed to being sent via email which would eliminate any alleged harm)—different cover

20  sheets may use different font sizes or other features which can result in the use of more, or less,

21  toner—a point demonstrated by the very variety found in Exhibit B to the Complaint.

22        Second, even if Plaintiff could allege facts evidencing an injury above the merely

23  speculative level, the miniscule amount of toner and electricity (both in an absolute sense and in

24  comparison to the total amount used to print the rest of the four-page fax) would be far too thin a

25  reed on which to premise Article III standing.  To rise to the level of a cognizable injury

26  sufficient for standing, the harm suffered must rise above a *de minimis* level. *See Skaff v.*

27  *Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007) (finding *de minimis*

28

injury alleged in complaint was "too trifling of an injury to support constitutional standing.")
This principle is rooted in the "ancient maxims of *de minimis non curat lex* and *lex non curat de minimis*," which "frequently has been followed by the Supreme Court" and "teach[es] that the law cares not about trifles." *Id*. at 839 (citations omitted).

Particularly analogous here is *Hernandez v. Path, Inc.*, No. 12-CV-01515-YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012). There, the plaintiff alleged that after downloading the defendant's cell phone application, the application installed tracking software that surreptitiously accessed the plaintiff's personally identifiable information, uploaded it to defendant's servers, and shared the information with defendant's advertisers. *Id*. at *1. The plaintiff sought damages under various state and federal statutes, including for harm for "diminished mobile device resources" that he claimed resulted in a depletion of "two to three seconds of battery capacity." *Id*. at *2. The court found this alleged harm was insufficient for Article III standing because "[t]he specific harm caused by diminished resources of which Plaintiff complains is *de minim[i]s*." *Id*., *also see LaCourt v. Specific Media, Inc.*, No. SACV 10–1256–GW(JCGx), 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (dismissing complaint for failure to identify a concrete injury-in-fact from defendant's alleged forced overriding of preferences on plaintiffs' computers and stating "[i]f the loss of the ability to delete cookies counts as harm to Plaintiffs' computers, then maybe Plaintiffs have alleged some *de minimis* injury, but probably not one that would give rise to Article III standing.")

At a certain point, an alleged injury is so *de minimis* as to constitute no injury at all for Constitutional purposes. *Cf. Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course a *de minimis* level of imposition with which the Constitution is not concerned."). Otherwise, the notion of an "injury-in-fact" loses all meaning.  Here, as in *Skaff* and *Hernandez*, such a line would be crossed.  *See*, *e.g*., *Texas v. Am. Blastfax, Inc*., 164 F. Supp. 2d 892, 901 (W.D. Tex. 2001) (recognizing that even 15 years ago, the cost of receiving a fax was pennies per page). Thus, even if Plaintiff could identify a non-speculative injury caused by the Identifier—which Plaintiff has not done—standing would hinge upon an injury that could amount to no more than

fractions of a penny given that the Identifier at issue was an incidental part of the cover page of the four-page Subject Fax.  *See* Section II, *infra*.  If the two to three second depletion of a cell phone battery is insufficient to invoke the limited jurisdiction of the federal courts, it is difficult to see how Plaintiff can fare any better.

Plaintiff has failed to demonstrate that it has standing to invoke the limited jurisdiction of this Court.  "[W]ithout some concrete interest that is affected by" the violation, an alleged statutory violation confers no standing. *Spokeo*, 136 S. Ct. at 1548-49. Yet Plaintiff fails to articulate how it suffered a concrete injury from the Identifier in this case. Instead, Plaintiff alleges only generalized harm it would have suffered regardless of which cover sheet RingCentral's customer might have chosen.  As such, Plaintiff fails to demonstrate a cognizable injury-in-fact.  Likewise, Plaintiff fails to demonstrate how such injury would be caused by RingCentral rather than the independent actions of third parties.  Because Plaintiff has not established standing, the Court must dismiss the Complaint under Rule 12(b)(1).

## II.   RingCentral Is Not A "Sender" Under The TCPA.

Although Plaintiff makes the conclusory allegation—entitled to no weight—that RingCentral was the "sender" of the Subject Fax within the meaning of the TCPA (Compl., ¶ 24), Plaintiff does not allege any facts supporting its conclusion.  Specifically, Plaintiff fails to plead that the Subject Fax was sent "on behalf of" RingCentral.  To the contrary, Plaintiff alleges that it was sent "on behalf of *one of RingCentral's users*." (Compl, ¶¶ 15, 25) (emphasis added). In the absence of any allegation that the Subject Fax was sent "on behalf of" RingCentral, Plaintiff cannot state a TCPA claim against RingCentral as a "sender" as a matter of law.

Based on a review of the Complaint as a whole, it appears that Plaintiff hopes to state a claim against RingCentral as a "sender" solely by claiming that "RingCentral's form fax cover sheets include[ ] [an] unsolicited advertisement for RingCentral's goods or services." (Compl., ¶ 20.)  If this is the basis of Plaintiff's claim for "sender" liability, it is unsupported by the TCPA or by the FCC's guidance as to its meaning.  Simply put, even if the Identifier were construed as an "unsolicited advertisement" (a point not conceded, as discussed further in Section III below),

1    neither Congress in enacting the TCPA nor the FCC in its guidance has indicated an intention to

2    impose liability against an entity based solely on the fact that a fax advertises that entity's goods

3    or services.  A review of the text of the TCPA, the legislative history underlying its enactment,

4    and the FCC guidance interpreting the TCPA, well illustrates this point.

5        The TCPA provides that "[i]t shall be unlawful for any person within the [U.S.] . . . to use

6    any telephone facsimile machine, computer or other device *to send* an unsolicited advertisement

7    to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C) (emphasis added).

8        As the Eleventh Circuit in *Palm Beach* recognized:

9        It is apparent that the meaning of "to send" [in the TCPA] is ambiguous[;] . . . the
         statute is silent as to who should be classified as a sender of unsolicited fax
10       advertisements.  [It] fails to identify whether . . . the sender is the advertiser, a fax
         broadcasting service hired by the advertiser, the common carrier whose network is
11       used to send the fax, or whether multiple individuals or entities are "senders."

12   781 F.3d at 1255-56.   Recognizing that ambiguity, and in response to requests made by

13   interested parties, in 1995 the FCC issued a Memorandum Opinion and Order "clarify[ing] that

14   the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for

15   compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters

16   are not liable for compliance with this rule." *Id.*; *Rules & Regulations Implementing the*

17   *Telephone Consumer Protection Act of 1991,* 10 FCC Rcd. 12391, 12407 (1995) ("1995 FCC

18   Order"). Pointing to the legislative history of the TCPA, the FCC found that Congress intended

19   to attach liability only to those parties that send the fax message and that the prohibitions on

20   sending unsolicited faxes do not apply to the "common carrier or other entity that transmits the

21   call or message and that is not the originator or controller of the content of the call or message."

22   *Id.* at 12407 n. 90.

23       As the *Palm Beach* court recognized, the 1995 FCC Order is consistent with

24   Congressional intent, which sought to limit two injuries by enacting the junk fax provision:

25   "(1) the shifting of some of the costs of advertising from the sender to the recipient, and (2) the

26   occupation of the recipient's facsimile machine so that it is unavailable for legitimate business

27   messages while processing and printing the junk fax." *Palm Beach*, 781 F.3d at 1257 (quoting

28

10

H.R. Rep. No. 102-317, at 10). By construing the sender as the party "on whose behalf facsimiles are transmitted," the FCC has placed liability at the source of the offending behavior Congress sought to curtail. *Id.*

In 2006, the FCC amended the definition of "sender" to provide that a sender is "the person or entity *on whose behalf* a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10) (emphasis added). In its accompanying Order, it elaborated on its intended meaning of that definition: "[*T*]*he sender is the person or entity on whose behalf the advertisement is sent*. In most instances, this will be the entity whose product or service is advertised or promoted in the message." *Rules and Regulation Implementing the* [TCPA] *of 1991*, 21 F.C.C. Rcd. 3787, 3808 (Apr. 5, 2006) ("2006 FCC Order") (emphasis added). In an effort to clarify which party bears responsibility for ensuring that opt-out requests are honored, the FCC further stated:

> We conclude that the sender--*the business on whose behalf the fax is transmitted*--is responsible for complying with the opt-out notice requirements and for honoring opt-out requests. Regardless of whether the sender includes its own contact information in the opt-out notice or the contact information of a third party retained to accept opt-out requests, the sender is liable for any violations of the rules. . . . Third parties, including fax broadcasters, need only accept and forward do-not-fax requests to the extent the underlying business contracts out such responsibilities to them.

*Id.* at 3807 (emphasis added).

The 2006 FCC Order and accompanying regulations codified the existing FCC rules whereby "the originator or controller of the content of the call or message[ ]" remained liable for prohibited faxes. 1995 FCC Order, 10 FCC Rcd at 12407 n.90 (1995). Indeed, the FCC made that point clear in a letter brief it filed in 2014 in response to a query from the Eleventh Circuit ("FCC Letter Brief"), in which it stated that its codified definition of "sender" in 2006 is "consistent with the Commission's pre-existing uncodified interpretation that 'the entity or entities *on whose behalf facsimiles are transmitted* are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements.'" 2014 WL 3734105, at *3 (July 17, 2014) (emphasis added). Indeed, the FCC has expressly stated that its intent is to impose liability only

1  on the entity "on whose behalf" an offending facsimile is transmitted.  *Id*.  The Supreme Court

2  has long held that courts must give substantial deference to the FCC's interpretation of its own

3  regulations.  *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

4          Citing FCC guidance, several district courts have found that an entity may not be held

5  liable under the TCPA solely because its goods or services are advertised—the fax must have

6  been sent on the entity's behalf <u>and</u> must advertise the entity's products.  *See Bais Yaakov v.*

7  *Varitronics*, LLC, No. CIV. 14-5008 ADM/FLN, 2015 WL 1529279, at *4 (D. Minn. Apr. 3,

8  2015); *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-CV-01592-AEP, 2014 WL

9  7224943, at *6 (M.D. Fla. Dec. 17, 2014).[1]

10         These same courts have further reasoned that an interpretation of "sender" imposing strict

11 liability simply because a person or entity's products were advertised in a fax leads to absurd

12 results which cannot possibly follow from a permissible construction of the TCPA or from an

13 agency's reasonable interpretation of its regulations.  As the *Cin-Q-Auto* court aptly stated:

14
15         To conclude that an individual or entity is *per se* a "sender" under the TCPA
               merely because their "goods or services" appear as advertised in the faxes at
16             issue, [ ] would give rise to, what the parties have labeled, sabotage liability. . . .
               Universal liability for complete inaction was not contemplated by Congress in
17             passing the TCPA and does not appear to have been contemplated by the FCC in
               crafting and interpreting its regulations.
18
19 2014 WL 7224943, at *6-*7; *see also Bais Yakov*, 2015 WL 1529279, at *4-*5 (citing *Cin-Q*

20 *Auto* and concluding that the defendant was "not subject to TCPA liability simply because the

21 Fax Advertisements promote VariQuest products").

22         Analyzing the same issue, the Seventh Circuit in *Bridgeview Health Care Ctr., Ltd. v.*

23 *Clark*, 816 F.3d 935, 938 (7th Cir. 2016), in affirming the trial court's decision, similarly noted

24
25 ──────────────

26 [1] Recently, the Sixth Circuit has disagreed, recognizing the significant deference afforded to
   agency decisions but rejecting the FCC's reasoning in the FCC Letter Brief as "not consistent
27 with its own regulations." *See, e.g., Siding and Insulation Co. v. Alco Vending, Inc.*, --- F.3d ---,
   2016 WL 2620507, at *8 (6th Cir. May 9, 2016).  But note that this portion of the Sixth Circuit's
28 decision is *dictum*.

that "the trial court [had] correctly rejected strict liability by recognizing that it would lead to 'absurd results,'" as "the very notion of advertising one's goods entails that one must do something to advertise them."   The trial court in *Bridgeview* elaborated on the basis for its conclusion that strict liability could not lie under the TCPA solely because an unsolicited fax promoting an entity's goods or services was transmitted, stating, *inter alia*:

> [A] rule of strict liability would lead to absurd results. To conclude that a defendant is always liable for faxes advertising her goods or services would allow an overzealous third party to expose a defendant to substantial liability without notice or without receiving any direction to do so. This sort of universal liability does not appear to have been contemplated by Congress either. *See* H.R. Rep. No. 317, 102d Cong., 1st Sess. 25 (1991) . . . . This indicates that Congress sought to penalize persons who *advertise* their goods via junk faxes.  But the very notion of advertising one's goods entails that one must do something to advertise them. A rule of strict liability, however, would go much further and penalize people for simply having goods that are "advertised" in a fax (perhaps unwillingly, by third parties), rather than penalize only those who take steps to advertise their goods unfairly by shifting the cost of advertising to the recipient.

*Bridgeview Health Care Ctr. v. Clark*, No. 09 C 5601, 2015 WL 1598115, at \*6-7 (N.D. Ill. Apr. 8, 2015), *aff'd sub nom.*, 816 F.3d 935 (7th Cir. 2016).

    As these decisions illustrate, not only has the FCC itself indicated that it did not intend for TCPA liability to attach based on the mere fact that an entity's goods or services are advertised in a fax, but imposing "universal liability" on a party that has done nothing to direct a fax to its recipient is patently absurd.  Accordingly, as Plaintiff has failed to allege that the Subject Fax was sent "on behalf of" RingCentral, Plaintiff has failed to state a claim against RingCentral as a "sender" within the meaning of the TCPA.

**III.**    <u>**RingCentral's Identifiers Are Not Unsolicited "Advertisements" Under The TCPA.**</u>

    Even if this Court were to conclude that Plaintiff has sufficiently alleged that RingCentral is a "sender" within the meaning of the TCPA, Count II must be dismissed because the Identifier is not an unsolicited "advertisement" under the TCPA.

    **A.**    **The TCPA Prohibits Only Unsolicited "Advertisements."**

    In enacting the TCPA, Congress did not impose a blanket prohibition on all fax

13

communications; to the contrary, the TCPA targets only unsolicited advertisements. 47 U.S.C. § 227(a)(5); *see also Physicians Healthsource, Inc. v. Janssen Pharm., Inc.,* No. 12-2132 (FLW), 2013 WL 486207, at *3-4 (D.N.J. Feb. 6, 2013) (informational messages do not fall within the purview of the TCPA); *Lutz Appellate Servs., Inc. v. Curry,* 859 F. Supp. 180, 182 (E.D. Pa. 1994) ("Congress clearly did not prohibit fax transmissions of all unsolicited information or communications, and there is some question whether it could do so constitutionally.").

Specifically, the TCPA states that it shall be unlawful to use a telephone facsimile machine to send to another telephone facsimile machine, an unsolicited advertisement. 47 § U.S.C. 227(b)(1)(C). Thus, the issue for this Court is whether the Subject Fax constitutes an "unsolicited advertisement" prohibited by the TCPA. If not, the TCPA does not apply and Count I must be dismissed. *See N.B. Industries I*, 2010 WL 4939970, at *12; *see also Physicians Healthsource*, 2013 WL 486207, at *1; *Holmes*, 2009 WL 3425961, at *4.

In interpreting the meaning of "unsolicited advertisement," the Court begins with the text of the TCPA itself. *P&S Printing LLC v. Tubelite, Inc.*, No. 3:14-CV-1441 VAB, 2015 WL 4425793, at *3 (D. Conn. July 17, 2015); *N.B. Indust. I,* 2010 WL 4939970, at *12; *N.B. Indust. II*, 465 Fed. Appx. at 642. The Court also considers interpretive guidance provided by the FCC, the administrative agency that is responsible for issuing regulations implementing the TCPA. 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."); *see generally FCC Rules and Regulations*; *compare N.B. Indust. I,* 2010 WL 4939970, at *12 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) for the proposition that agency interpretations and guidelines "constitute a body of experience and informed judgment to which courts and litigants may resort for guidance"), with *N.B. Indust. II*, 465 Fed. Appx. at 642-43 (citing *Chevron, U.S.A. v. NRDC, Inc.*, 467 U.S. 837, 845 (1984) ("[W]e must turn to the interpretation of JFPA promulgated by the [FCC] . . . .").

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 16-cv-02113-JSW

U.S.C. § 227(a)(5).  In 2005 and 2006, the FCC issued regulations implementing the TCPA and provided written guidance on the application of those regulations.  *See* 47 C.F.R. § 64.1200 (May 3, 2006); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005* ("*FCC Rules and Regulations*"), 71 Fed. Reg. 25,972 (May 3, 2006); *Holmes*, 2009 WL 3425961, at *4.  In its written guidance, the FCC carefully distinguished between "advertising" faxes, which are subject to the TCPA, and other types of faxes, which are not. *See FCC Rules and Regulations*, at 25,972 ("[M]essages that are not commercial in nature . . . do not constitute 'unsolicited advertisements' and are therefore not covered by the facsimile advertising prohibition."); *id.* (adding that "the Commission does not intend for the clarifications in this Order to result in the regulation of noncommercial speech as commercial facsimile messages under the TCPA regulatory scheme").  The FCC's examples of non-"advertising" faxes not subject to the TCPA included two categories of messages: (1) informational communications and (2) non-advertisement messages with incidental or *de minimis* advertising information.  *FCC Rules and Regulations*, at 25,972–73; *see also N.B. Indus. I*, 2010 WL 4939970, at *5.

In *N.B. Industries I*, the Northern District of California elaborated on the types of messages that may fall into each category.  2010 WL 4939970, at *4.  With respect to the first category, the court recognized that "faxes that truly have only information—such as industry news articles, legislative updates, or employee benefit information—are not messages promoting the 'commercial availability or quality of any property, goods, or services' and thus are not advertisements."  *Id.* at *7.  "[T]he potential to gain some benefit from sending information, without the presence of additional commercial statement in the message, is insufficient to transform an informational message to an advertisement." *Physicians Healthsource*, 2013 WL 486207, at *4; *see also Lutz Appellate Servs., Inc.,* 859 F. Supp. at 181–82 (although a recipient may apply for a job described in a fax, that fact does not alter the fax's informational nature).

As to the second category of messages not subject to the TCPA—"non-advertisement communications with incidental or *de minimis* advertising information"—the court stated:

1
2
3

In discussing how small amounts of advertising material should not convert a communication into an 'unsolicited advertisement,' the FCC concluded that a reference to a commercial entity [specifically, a "company logo" or "business slogan"] does not by itself make a message a commercial message. . . .

4
5
6
7
8

Similarly, an "incidental advertisement" in an otherwise "informational" message does not convert the entire communication into an advertisement. . . . . In determining whether the advertisement is incidental to the informational communication, the FCC considers, among other factors, the following: (a) whether the communication is issued on a regular schedule; (b) whether the text of the communication changes from issue to issue; and (c) whether the communication is directed to specific regular recipients (such as paid subscribers or to recipients who have initiated membership in the organization sending the communication). *Id.*

9
10
11
12

In determining whether advertising information is incidental to either a transactional or an informational message, the FCC also considers the following: (a) the amount of space devoted to advertising versus the amount of space used for the informational or transactional message; and (b) whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the advertising space is sold to and transmitted on behalf of entities other than the sender. *Id.*

13   *Id.* at *7–8; *see also N.B. Indus. II*, 465 Fed. App'x at 643 ("The FCC Order interpreting JFPA

14   indicates that company logos and business slogans are advertising, although, in many cases, so

15   de minimis in comparison to the fax as a whole as not to render the entire fax an advertisement.")

16   Both the Northern District of California and the Ninth Circuit applied these principles to

17   the faxes at issue in *N.B. Industries I*:  four-page faxes sent to the plaintiff by Defendants Wells

18   Fargo and USPAAC that were comprised almost entirely of information about an Asian Business

19   Leadership Award, an application for the award, and encouragement to apply.  2010 WL

20   4939970, at *1–2.  Additionally, "the faxes contained five mentions of a 2010 USPAACC

21   CelebrAsian Business Opportunity Conference, were marked with six USPAACC or Wells

22   Fargo [penny-sized] logos; provided general (non-award specific) USPAACC or Wells Fargo

23   contact information, twice; [included the Wells Fargo slogan "Together we'll go far;"] and once

24   invited recipients to '[v]isit' USPAACC and Wells Fargo's websites, sites that contained

25   information advertising their services."  *N.B. Indus. II*, 465 F. App'x at 642.

26   Applying the above-stated FCC guidance to the faxes at issue, the Northern District

27   concluded that the plaintiff's complaint failed as a matter of law to allege a TCPA claim against

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 16-cv-02113-JSW

Wells Fargo and USPAACC because the faxes "announce[d] only the availability of an award, [did] not advertise 'the commercial availability or quality' of Wells Fargo's or USPAACC's 'property, goods, or services,' and [we]re not rendered 'advertisements' merely by the inclusion of logos and website addresses." *N.B. Indus. I*, 2010 WL 4939970, at *4.  In analyzing the logos, web addresses, and slogans included on the four-page faxes, the court stated:

> The so-called advertising content here appears because it identifies the award's sponsors.  It is modest in the space it uses, and—besides the references to Wells Fargo's Asian Business Services—suggests nothing about the commercial availability or quality of any of Wells Fargo's or USPAACC's property, goods, or services . . . .  If the logos and similar information are advertising content, then they are entirely incidental, and they do not convert the faxed applications into advertisements.

*Id.* at *11.  On appeal, the Ninth Circuit affirmed, holding that while the logos, slogans and contact information on the faxes "could reasonably be construed as advertising the commercial availability of [the senders'] goods and services," they "constituted such a small portion of the faxes as to be incidental to the [primary purpose of the fax,] the award application." *N.B. Indus. II*, 465 F. App'x at 643. It further opined that "[s]uch de minimis advertising is insufficient to transform faxes that were largely permissible into prohibited communications."  *Id.*

The District of Connecticut applied these same principles and granted a motion to dismiss a TCPA claim in *P&S Printing LLC v. Tubelite, Inc.*, No. 3:14-cv-1441 VAB, 2015 WL 4425793 (D. Conn. July 17, 2015).  There, the plaintiff alleged it received a one-page unsolicited fax from Tubelite, a company with whom it did not have a business relationship, informing it that Tubelite would be closed on Labor Day and providing a revised delivery schedule.  *Id.* at *1. It also noted that "'Tubelite continues its commitment to provide you with the best service possible' and thank[ed] the recipient for 'continued support and help in allowing [Tubelite] to provide [them] with this exceptional service.'" *Id.*  At the top of the page was a logo for Tubelite that contained "the word 'dependable' and identif[ied] them as 'leaders in eco-efficient storefront, curtainwall and entrance systems.'" *Id.*  The footer contained Tubelite's telephone and fax number, web address, and street address.  *Id.* at *7.

After reviewing the plain language of the TCPA as well as the FCC's guidance on

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 16-cv-02113-JSW

informational faxes and faxes containing incidental advertising, the court granted Tubelite's motion to dismiss, concluding that the fax's "<u>primary purpose</u>, on its face, was to communicate information to current customers about a change in delivery schedule due to the Labor Day holiday. . . . Although it is true that the message could apply to new customers, . . . attracting new customers is not its <u>primary purpose</u>." *Id.* at *5 (emphasis added).  The court further opined that "any phrases or images in the fax that could be considered 'advertisements' are merely incidental and are not large enough or integral enough to the document's purpose to convert it into an advertisement. . . . While Tubelite may experience some incidental benefit of having its logo and a few positive phrases on this communication, the mere presence of a logo on a document does not transform that entire document into advertising under the TCPA." *Id.* at *6.

### B. The Identifier Is Not An "Advertisement" Subject To The TCPA.

Following FCC guidance and the reasoning of *N.B. Industries* and *P&S Printing*, an examination of the Identifier makes clear that it is not an advertisement prohibited by the TCPA.

First, the Identifier is merely informational and therefore does not constitute an advertisement under the TCPA. The sole target of Plaintiff's TCPA claim against RingCentral—the one-line Identifier on the footer of the Coversheet attached to the Subject Fax—does nothing more than identify RingCentral as the company over whose system RingCentral's customer transmitted the fax. *See N.B. Indus. I,* 2010 WL 4939970, at *11 (finding that company logos, web sites, and slogans were merely identifiers).  Plaintiff's allegation in its Complaint that the tagline "[s]end and receive faxes with RingCentral" in the cover sheet footer "encourages recipients to sign up for RingCentral's paid faxing service by visiting RingCentral's web site" (Compl. ¶ 16) is conclusory and thus entitled to no weight.  *See Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009). Contrary to Plaintiff's claim, the RingCentral name on the fax cover page simply identifies the platform over which the customer transmitted its fax, and the short tagline merely provides explanatory or informational context.  In the absence of the tagline, the fax recipient would be left to wonder why RingCentral's name appeared on the cover page of another party's fax, the content of which has nothing at all to do with RingCentral.  As such, the

1   RingCentral name and tagline are purely informational and in keeping with the spirit of the

2   FCC's guidance and rules. Accordingly, the Identifier on the fax cover sheet at issue was a

3   permissible informational statement that fails to constitute an "advertisement" under the TCPA.

4          The FCC already has recognized that the mere presence of a company's logo and

5   business slogan does <u>not</u> transform a fax to which it may be attached or embedded into an

6   "advertisement" within the meaning of the TCPA. *FCC Rules and Regulations*, at 25,973.  A

7   contrary ruling would require this Court to find that terse information on a fax cover sheet

8   merely identifying the telecommunications platform over which the fax was transmitted

9   transforms another party's fax into the fax platform's "advertisement."  That would mean, in

10  essence, that a fax service provider's simple inclusion of its logo—or anything else identifying it

11  as the provider of the plumbing that delivered the fax—would commandeer every fax sent by its

12  customers as the provider's advertising channel.  TCPA liability would attach, opening a

13  Pandora's box of litigation in cases where plaintiffs have suffered no real harm. Clearly, this

14  sweeping result was not the intent of Congress or the FCC.

15         Moreover, the factors set forth by the FCC in an effort to shed light on whether a

16  communication is indeed "informational" underscore that the Identifier is not the type of

17  communication that Congress intended to regulate under the TCPA, as the factors largely do not

18  even apply in this context.  The Identifier is simply part of a form cover sheet generally available

19  to RingCentral customers to use if they so choose when sending a fax message.  It is not a

20  "communication issued on a regular schedule" and it is not "directed" by RingCentral to any

21  "specific regular recipient" of faxes.  Indeed, RingCentral does not direct its available cover

22  sheets to any fax recipient at all.  It is RingCentral's <u>customer</u>, not RingCentral, who decides

23  whether and to whom to direct a particular fax, whether to include a cover sheet, and whether to

24  use a RingCentral template cover sheet that contains the service platform Identifier.

25         It is also RingCentral's customer, not RingCentral, who unilaterally determines the

26  content and purpose of the fax communication itself, an important factor recognized by the court

27  in *P&S Printing*. 2015 WL 4425793, at *5 (reasoning that the primary purpose of the fax at issue

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 16-cv-02113-JSW

was informational, thus rendering Tubelite's logo and positive phrases incidental and removing the fax from the purview of the TCPA).  Here, Plaintiff does not allege that the primary purpose of the Subject Fax is to advertise RingCentral's services.  A review of the single page attached as Exhibit A to Plaintiff's Complaint sheds light on why Plaintiff makes no such allegation, as it illustrates that the purpose of RingCentral's customer in transmitting the Subject Fax was to notify the recipient of an upcoming seminar.  The same rings true as to any fax sent by a RingCentral customer using any of the template cover pages at issue containing the Identifier: as RingCentral does not determine the content of the fax, the primary purpose of any such fax will always be to communicate the customer's message, not a RingCentral message.

Finally, the amount of space devoted to the Identifier is so *de minimis* that even if it constituted advertising (a point not conceded here), any so-called advertising is unquestionably "incidental" to the message as a whole.  Indeed, the Identifier that Plaintiff claims is an "advertisement" consists of only one line of text approximately one-eighth of an inch in height.  Printed on a standard 8.5 by 11 inch sheet of paper (*i.e.*, the cover page received by Plaintiff), that text constitutes approximately 1/88 of the length of the page.  As Plaintiff has alleged that the entire Subject Fax was four pages, the Identifier constituted only 1/352 of the full fax length.  Stated another way, the Identifier takes up less than 1% of the entire cover page area, and less than ¼ of 1% of the entire fax area.[2]  Under any conceivable construction of "incidental advertising," a message that takes up a mere 1/352, or less than ¼ of 1% of a communication unquestionably qualifies.

Indeed, the courts in *N.B. Industries*, *P&S Printing*, and at least one other district court have held that faxes comprised of far more so-called "advertising" content than the Subject Fax did not violate the TCPA. *See Holmes*, 695 F.Supp.2d at 851 (reaffirming its previous determination that a fax at issue, one-seventh of which comprised advertising, did not violate TCPA); *P&S Printing*, 2015 WL 4425793, at *6 (holding that a company logo, web address,

---

[2] The Identifier is .836% of the entire cover page area ((6.25 x .125)/(8.5 x 11)) and .209% of the entire (four-page) fax area.

telephone number, street address and at least four positive words or phrases about the company included on a one-page fax were "merely incidental and [ ] not large enough or integral enough to the document's purpose to convert it into an advertisement."); *N.B. Industries I*, 2010 WL 4939970, at *11 (holding that "[t]he modest logos and business slogans do not convert the faxes here into advertisements."); *N.B. Industries II*, 465 F. App'x at 643 (affirming the district court's decision and stating that while "there is little caselaw on what percentage of incidental advertising is too much[,]" based on a review of the fax attached to the complaint, "it is clear that the percentage [of incidental advertising] in this case is very low.")

Accordingly, for the same reasons set forth by the Northern District and affirmed by the Ninth Circuit in *N.B. Industries*, as well as under FCC regulations, the Identifier on the cover sheet of the Subject Fax is not an "unsolicited advertisement" as a matter of law.  Count I, therefore, fails to state a TCPA claim against RingCentral, and must be dismissed.

**IV.    <u>The Conversion Claim Alleged in Count II Fails As A Matter Of Law.</u>**

Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights . . . ." *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex. 1971). To state a claim for conversion, a plaintiff must allege: (1) plaintiff was entitled to possession of the property; (2) defendant, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return it. *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 412 (Tex. App. 2014) (citations omitted); *cf. PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,* 150 Cal. App. 4th 384, 394 (Cal. Ct. App. 2007) (setting forth similar elements of a conversion claim under California law).[3]

---

[3] Texas law likely applies to Plaintiff's claim for conversion, as Plaintiff's principal place of business—where the fax allegedly would have been received—is in Houston, Texas. (Compl. ¶ 10.) As both states require proof of similar elements for conversion, and neither has analyzed the viability of a conversion claim in this context, the law of both states is discussed herein.

Plaintiff has failed to allege any facts sufficient to demonstrate the existence of element two, and even if it had, Plaintiff's alleged damages are so *de minimis* that they do not support a common law claim for conversion as a matter of law.

**A.    RingCentral Has Never Controlled Plaintiff's Property.**

Plaintiff has failed to allege any conduct to support the second element of a conversion claim against RingCentral, as Plaintiff has not alleged that RingCentral assumed or exercised dominion and control over Plaintiff's property. The sole act Plaintiff complains of in its Complaint is RingCentral's provision to <u>its own customers</u> of a form fax cover page containing one line of text identifying RingCentral. (Compl. ¶¶ 15-22.)  Plaintiff alleges that the Subject Fax to which the cover page was attached then was transmitted to Plaintiff over RingCentral's system at the direction of and "on behalf of one of RingCentral's users." (Compl, ¶¶ 15, 25.)  Thus, the gist of Plaintiff's conversion claim is that RingCentral, by making generally available to its customers optional form fax cover sheets that include a RingCentral Identifier, "improperly and unlawfully converted [Plaintiff's] facsimile machine[ ], toner and paper to its own use," and "also converted Plaintiff's employees' time to its own use." (Compl., ¶ 56).

Such averment fails to state a conversion claim against RingCentral for several reasons. First, there is no Texas or California authority for the proposition that RingCentral's sole act of providing one line of text in a footer on an optional cover page used by a customer when transmitting a fax over RingCentral's system is sufficient to support a conversion claim—particularly given that the customer's fax was neither sent at RingCentral's direction nor on RingCentral's behalf.  As the Texas Court of Appeals has recognized:

> Generally, before there can be a conversion of property, there must be an act of malfeasance and not a mere nonfeasance; a positive wrong and not the mere omission of what was right.

*Branham v. Prewitt*, 636 S.W.2d 507, 510-11 (Tex. App. 1982) (internal citation omitted); *see also PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,* 150 Cal. App. 4th 384, 394 (Cal. Ct. App. 2007) (plaintiff must allege a defendant's wrongful act toward the property, causing interference with the plaintiff's possession). Here, Plaintiff does not allege that

RingCentral committed any act of malfeasance directed at, or exercised control over, Plaintiff's property, as it was RingCentral's customer, not RingCentral, that determined the content of the fax and opted to attach the cover page bearing the Identifier.

Stated another way, "[b]efore there can be a conversion, there must be an intent on the part of the defendant to assert some right in the property." *Thawar v. 7-Eleven, Inc.*, No. 3:15-CV-2675-B, 2016 WL 775848, at *3 (N.D. Tex. Feb. 29, 2016) (citation omitted).   Here, Plaintiff has failed to plead that RingCentral intended to assert any right in Plaintiff's property. To the contrary, Plaintiff's allegations make clear that the Subject Fax was sent at the direction of, and "on behalf of," RingCentral's customer. (Compl. ¶ 15).

Second, Plaintiff's paper, ink and toner – items allegedly converted – never came into RingCentral's possession.  While neither Texas nor California courts have analyzed a conversion claim in this context, the Northern District of Illinois, faced with a similar question, has held that the sending of an unauthorized fax does not constitute a conversion because the recipient's paper, ink and toner "never came into [defendant's] possession at all." *Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns*, 443 F. Supp.2d 976, 980 (N.D. Ill. 2006).

Nor is it a conversion of property to waste an employee's time as Plaintiff alleges. Indeed, Texas courts have "never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted."  *Simmonds Equip., LLC v. GGR Intern., Inc.*, 126 F. Supp. 3d 855, 869 (S.D. Tex. 2015) (citing cases) (internal citations and quotations omitted). Indeed, the *Rossario's* court offered the following example to show the absurdity in Plaintiff's contention:  "Under the plaintiff's approach this Court could well charge it and its counsel with 'conversion' for the Court's having had to waste paper and ink in the just-completed analysis [that dismissed plaintiff's conversion claim]." *Rossario's*, 443 F. Supp. 2d at 980.

For conversion to lie, a defendant must take possession, or at least exercise control over Plaintiff's property by a wrongful act taken against the property. RingCentral's simple act of providing a fax cover sheet to its customer that its customer then transmitted to Plaintiff over

1   RingCentral's system does not meet this standard. Accordingly, Count II must be dismissed.

2       **B.**        **Plaintiff Has Not Suffered More Than Trivial Inconvenience Or Expense.**

3             Both Texas and California follow the Restatement (Second) of Torts Section 222A

4   (1965) in determining what constitutes a conversion. *See Young v. Huddleston*, No. CIV.A.

5   6:05CV348, 2006 WL 722135, at *5 (E.D. Tex. Mar. 22, 2006); *Ananda Church of Self-*

6   *Realization v. Massachusetts Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1281 (Cal. Ct. App. 2002).

7   Under Section 222A(2), not only must there be the intentional exercise of dominion or control

8   over a chattel in order for conversion to lie, but that control must "so seriously interfere with the

9   right of another to control [its property] that the actor may be justly required to pay the other the

10  full value of the chattel."  Among the factors to be considered in evaluating the "seriousness" of

11  the interference that is the subject of a conversion claim is "the inconvenience and expense

12  caused to the other."  *Id.*  The question in a conversion case is one of degree; there is no type of

13  conduct that is always sufficient to amount to a conversion. *Id.*

14            Here, Plaintiff cannot state an actionable claim for conversion because its alleged loss  is

15  *de minimis*.  The doctrine of *de minimis non curat lex*, or "the law does not concern itself with

16  trifles," prevents collecting on claims where the damages are just too small to warrant treatment

17  in the judicial system.  *Skaff,* 506 F.3d at 839–40 ("The ancient maxims of *de minimis non curat*

18  *lex* and *lex non curat de minimis* teach that the law cares not about trifles."); *Jones v. Copeland*,

19  No. 07-11-00437-CV, 2012 WL 3536764, at *5–6 (Tex. App. Aug. 16, 2012) (claims for two

20  and one-half bags of coffee, five pens, and a padlock were *de minimus*); *see also* Cal. Civ. Code

21  § 3533 (West 2016) ("The law disregards trifles."); *Kullman v. Greenebaum*, 28 P. 674, 674–75

22  (Cal. 1891) (holding that the court was justified in determining point against appellants upon

23  the maxim *de minimis non curat lex*, as the amount in controversy was $37).

24            Numerous judges from other jurisdictions who were faced with conversion claims pled

25  in tandem with TCPA claims have dismissed those claims based on the *de minimis* doctrine.

26  *See, e.g., Izsak v. Draftkings, Inc.*, No. 14-cv-07952, 2016 WL 3227299, at *7 (N.D. Ill. June

27  13, 2016); *Neurocare Inst. of C. Florida, P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1368

28

1 (M.D. Fla. 2014); *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*, No. 11–cv–

2 6959, 2012 WL 638765, at *2 (N.D. Ill. Feb. 23, 2012); *Rossario's*, 443 F. Supp. 2d at 980

3 (finding that "the ancient maxim '*de minimis non cura Lex*' might well have been coined for

4 this occasion"); *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287–88 (Nev.

5 2006) ("any damage to [plaintiff's] paper and toner that occurred from a single facsimile

6 advertisement was merely technical and so inconsiderable as to require the application of the

7 common-law doctrine *de minimis non curat lex* . . . .").[4]

8     These cases are instructive, as all Plaintiff can hope to gain from a favorable judgment

9 on Count II is a couple of pennies. Plaintiff's harm cannot be aggregated with putative class

10 members, as Plaintiff must first have a valid cause of action in its own right before it can

11 proceed to represent a class. *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F.

12 Supp. 2d 610, 614 (N.D. Ill. 2009). Because the severity of any interference, inconvenience,

13 and expense Plaintiff alleges to have suffered is too trivial and insufficient to support a

14 conversion claim, Count II should be dismissed with prejudice.

15 **CONCLUSION**

16     For all of these reasons, this Court should grant RingCentral's Motion to Dismiss, enter

17 judgment in favor of RingCentral on Plaintiff's Class Action Complaint, and award RingCentral

18 its fees and costs herein expended, along with such other and further relief as this Court deems

19 just and proper.

20 Dated: July 8, 2016         GREENSFELDER, HEMKER & GALE, P.C.

21         By: /s/ *Mary Ann L. Wymore*

22         *Attorneys for Defendant RingCentral, Inc.*

23

24

25 [4] Some courts have arrived at a different conclusion on similar facts, *see, e.g., Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 782 (N.D. Ill. 2008); *Brodsky v.*
26 *Humanadental Ins. Co.*, No. 10–CV–3233, 2011 WL 529302, at *7 (N.D. Ill. Feb. 8, 2011), but the court in *Old Town Pizza* aptly rejected those decisions, explaining that they were based on an
27 inappropriate aggregation of damages prior to class certification or a conflation of the *de minimis* doctrine with the concept of nominal damages. 2012 WL 638765, at *3–4.

28

25

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS<br>CASE NO. 16-cv-02113-JSW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I certify that all counsel of record are being served on July 8, 2016 with a copy of this document via the Court's CM/ECF system.

_____
/s/ Mary Ann L. Wymore
MARY ANN L. WYMORE

1608978

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 16-cv-02113-JSW