UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUPPLY PRO SORBENTS, LLC, | Case No.  16-cv-02113-JSW |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND DENYING AS MOOT MOTION TO STAY** |
| RINGCENTRAL, INC., | |
| Defendant. | Re: Dkt. Nos. 50, 51 |

Now before the Court are the motion to dismiss the first amended complaint and the motion to stay this action pursuant to the doctrine of primary jurisdiction both filed by Defendant RingCentral, Inc. ("Defendant").  Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court HEREBY GRANTS Defendant's motion to dismiss the first amended complaint without leave to amend and DENIES Defendant's motion to stay this action as moot.

### BACKGROUND

Supply Pro Sorbents, LLC ("Plaintiff") brings this putative class action to challenge Defendant's alleged practice of adding an unsolicited advertisement in the form of a one-line identifier on the bottom of the cover page of documents sent by facsimile.  (First Amended Complaint ("FAC") ¶ 1.)  Defendant operates a cloud-based business communications service that offers a system by which Defendant sends and receives its users' faxes.  (*Id*. at ¶ 2.)

On or about April 13, 2016, Plaintiff received a fax ("Subject Fax") that included a cover sheet with an identifier containing Defendant's logo and one line of text that stated "Send and receive faxes with RingCentral, www.ringcentral.com."  (*Id*. at ¶¶ 18, 20, Ex. A.)  While Plaintiff

United States District Court
Northern District of California

admits that Defendant has created several coversheets that its users have the option to attach to outgoing faxes sent via Defendant's service, Plaintiff alleges that each coversheet contains the same one-line identifier that cannot be modified or removed.  (*Id.* at ¶¶ 24-26.)  Plaintiff claims that this one-line identifier constitutes an unsolicited advertisement and violates the Telephone Consumer Protection Act, 47 U.S.C. Section 227 (the "TCPA"), which prohibits a person from sending any advertisement by facsimile without the recipient's prior express invitation or permission.  (*Id.* at ¶¶ 5, 18, 21.)  Additionally, Plaintiff alleges Defendant improperly converted putative class members' fax machines, toner, and paper as well as Plaintiff's employees' time to its own use.  (*Id.* at ¶ 64.)

On July 6, 2016, Defendant filed a Petition for Expedited Declaratory Ruling with the Federal Communications Commission ("FCC") seeking clarification of the term "sender" under 47 C.F.R. Section 64.1200(f)(10) and to clarify the precise scope of "non-advertisement communications with incidental or *de minimis* advertising information."  (*See* Motion to Stay, Ex. A.)  The Court later granted Defendant's motion to dismiss both causes of action in the initial complaint with leave to amend and denied as moot Defendant's motion to stay.  Plaintiff subsequently filed an amended complaint.

Defendant now moves to dismiss the TCPA claim in the first amended complaint based on lack of Article III standing and the conversion claim based on failure to state a claim upon which relief can be granted.  In a separate motion, Defendant moves to dismiss or to stay this action pursuant to the doctrine of primary jurisdiction pending the determination of the petition before the FCC.

The Court shall address other specific facts in the remainder of its order.

## ANALYSIS

**A.      Legal Standards on a Motion to Dismiss.**

The Court evaluates a motion to dismiss for lack of Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

United States District Court
Northern District of California

1   2004).  Here, Defendant raises a facial challenge to Plaintiff's standing.  Therefore, the Court

2   "must accept as true all material allegations in the complaint, and must construe the complaint in

3   the nonmovant's favor."  *Chandler*, 598 F.3d at 1221; *see also Lujan v. Defenders of Wildlife*, 504

4   U.S. 555, 561 (1992) ("[O]n a motion to dismiss, [courts] presume that general allegations

5   embrace those specific facts that are necessary to support the claim.") (internal citations and

6   quotations omitted).

7       A motion to dismiss for failure to state a claim upon which relief can be granted is proper

8   under Federal Rule of Civil Procedure 12(b)(6) and should be granted if the complaint fails to

9   "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

10  547 (2007).  Under this standard, the Court must accept all material allegations in the complaint as

11  true and construe the pleadings in the light most favorable to the nonmoving party.  *Friedman v.*

12  *AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017).  "However, the [C]ourt is not required to accept

13  legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be

14  drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

15  1994).

16  **B.      Unsolicited Advertisement.**

17      The Court first addresses the dispositive issue of whether the identifier on the bottom of

18  the Subject Fax transforms the fax into a prohibited, unsolicited advertisement under the TCPA.

19  *See* 47 U.S.C. § 227(b)(1)(C) (making it unlawful "to send, to a telephone facsimile machine, an

20  unsolicited advertisement").  An unsolicited advertisement is "any material advertising the

21  commercial availability or quality of any property, goods or services which is transmitted to any

22  person without that person's prior express invitation or permission, in writing or otherwise."  47

23  U.S.C. § 227(a)(5).  While the plain meaning of "unsolicited advertisement" in the statute is

24  unambiguous, the Court may still "consider and rely on" the FCC's *Rules and Regulations*

25  *Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*

26  (the "FCC Rules and Regulations"), which "do provide some guidance as to how to apply the

27  statutory definition."  *N.B. Industries v. Wells Fargo & Co.*, No. C 10-03203, 2010 WL 4939970,

28  at *5 (N.D. Cal. Nov. 30, 2010); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))

United States District Court
Northern District of California

("[A]gency interpretations and guidelines, even when not controlling, constitute a body of experience and informed judgment to which courts and litigants may resort for guidance.").

The FCC Rules and Regulations state that "a reference to a commercial entity does not by itself make a message a commercial message." *FCC Rules and Regulations*, 71 Fed. Reg. 25967-01, *25,973 (May 3, 2006); *see also N.B. Industries*, 2010 WL 4939970, at *7 ("[A]n incidental advertisement in an otherwise informational message does not convert the entire communication into an advertisement.") (internal citations and quotations omitted); *see also P&S Printing LLC v. Tubelite, Inc.*, No. 3:14-cv-1441, 2015 WL 4425793, at *4 (D. Conn. 2015) ("The FCC has also recognized that documents with only an incidental amount of advertising are not advertisements under the TCPA."). The most relevant factor that the FCC considers to determine whether an advertisement is incidental is "the amount of space devoted to advertising versus the amount of space used for information or transactional messages." *FCC Rules and Regulations*, 71 Fed. Reg. at *25,973 (internal citations and quotations omitted). In the Regulations, the FCC provides an example of a company logo or business slogan on an account statement as incidental advertising, and the Regulations explain that those identifiers "would not convert the communication into an advertisement, so long as the primary purpose of the communication . . . is to relay account information to the fax recipient." *Id*.

Here, the one-line identifier at the bottom of a four-page fax does not extend the Subject Fax beyond the boundaries of a mere incidental advertisement. While there is little case law that defines what percentage of incidental advertising is sufficient to transform a largely permissible fax into a prohibited communication, the identifier here proves to be smaller than most advertising deemed incidental. *See N.B. Industries, Inc. v. Wells Fargo & Co.*, 465 Fed. App'x 640, 642-43 (9th Cir. 2012) (holding that multiple logos and slogans as well as contact information "constituted such a small portion of the faxes as to be incidental" advertising); *see also Holmes v. Back Doctors, Ltd.*, 695 F. Supp. 2d 843, 851 (S.D. Ill. 2010) (holding that advertising that took up "about one-seventh of each of the two faxes sent" was incidental); *cf. Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 686 (7th Cir. 2013) (holding that an advertisement constituting twenty-five percent of a one-page fax was not considered to be incidental).

United States District Court
Northern District of California

1    Plaintiff claims that *N.B. Industries, Inc.* is distinguishable because the district court there

2 found the business logos and slogans did not promote the commercial availability or quality of the

3 defendants' property, goods, or services.  However, the Ninth Circuit disagreed on appeal and held

4 that "[t]he logos, slogans, and contact information . . . could reasonably be construed as

5 advertising the commercial availability" of defendants' goods and services because the identifiers

6 sufficiently suggested a specific service related to the main content of the fax.  *N.B. Industries*,

7 465 Fed. App'x at 643 ("[A] recipient of the faxes could reasonably infer from the references to

8 Wells Fargo's Asian Business Services program that Wells Fargo sells services to Asian

9 businesses.").

10    Although the one-line identifier does promote Defendant's services and thus constitutes an

11 advertisement, this Court finds that the de minimis size of the identifier does not transform the

12 Subject Fax into an unsolicited fax.[1]  Plaintiff has not alleged facts to support its allegation that the

13 Subject Fax constitutes an unsolicited advertisement, and Plaintiff cannot allege a set of facts that

14 would support this allegation and remain consistent with the allegations in the first amended

15 complaint.  Accordingly, the Court GRANTS Defendant's motion to dismiss the first claim for

16 relief for violation of the TCPA without leave to amend pursuant to Federal Rule of Procedure

17 12(b)(6).

18 **C.    Article III Standing.**

19    Alternatively, even if the identifier here were construed as adequate to transform the

20 Subject Fax into an unsolicited advertisement, Defendant argues that Plaintiff  has insufficiently

21 alleged a particularized injury caused by Defendant's conduct.  The Constitution requires a

22 plaintiff to prove that it has standing to sue in order to invoke a federal court's jurisdiction.  *See*

23 *Lujan*, 504 U.S. at 560-61.  There are three "irreducible" elements of Article III standing: (1) "the

24 plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is

25 (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2)

26

27 _____

[1]  The Court's finding that the identifier does not rise to the level of an unsolicited advertisement

28 moots Plaintiff's allegation that Defendant failed to include a proper opt-out notice, because the
notice requirement only applies to unsolicited advertisements.  (*See* FAC ¶ 22.)

the injury must be "fairly traceable to the challenged action of the defendant;" and (3) a favorable decision will be "likely" to redress the injury. *Id.* A plaintiff's failure to satisfy these constitutional requirements requires a court to dismiss the complaint for lack of jurisdiction. *See Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 475-76 (1982).

### 1. Injury.

Defendant contends that Plaintiff has failed to allege an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Id.* (internal citations and quotations omitted). "[T]hrough the TCPA, Congress intended to remedy a number of problems associated with junk faxes, including the cost of paper and ink, the difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems," as well as loss of employee time. *Imhoff Investment, LLC v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015); *see also Ira Holzman*, 728 F.3d at 684 (noting that "the value of the time necessary to realize that the inbox has been cluttered by junk" is a protected interest under the TCPA; *see also* H.R. Rep. No. 102-317, at 10 (1991) (proliferation of fax machines shifts costs of telemarking advertising from the sender to the recipient and makes recipient's fax machines unavailable for legitimate business messages while processing and printing the junk fax).

Here, the Court finds that Plaintiff sufficiently alleges that it has suffered concrete and actual harm. Plaintiff claims loss of use of its fax machine for the increased amount of time necessary to transmit the identifier on the Subject Fax, ink toner, and its employees' time spent assessing the identifier, as well as unwanted wear and tear on its fax machine.[2] (*See* FAC ¶ 11.) Although Defendant challenges the concreteness of these alleged injuries, case law supports that the claimed injuries satisfy that constitutional requirement. *See U.S. v. Chavez-Vernaza*, 844 F.2d

---

[2] Plaintiff additionally alleges an invasion of privacy interest. (*See* FAC ¶ 11.) Yet, while the TCPA seeks to protect privacy interests, "[p]rivacy is personal to individuals and does not encompass any corporate interest." *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 814 (9th Cir. 2002). Therefore, the Court finds this allegation insufficient to satisfy the Article III standing requirement that an injury be particularized.

1    1368, 1374 (9th Cir. 1987) ("[A]bsent a strong reason to do so, we will not create a direct conflict

2    with other circuits."); *see also Imhoff Investment*, 792 F.3d at 631 (holding that the cost of paper

3    and ink, tying up the recipient's telephone line, and the stress on the switchboard systems are

4    injuries that confer Article III standing); *see also Palm Beach Golf Ctr.-Boca, Inc. v. John G.*

5    *Sarris*, 781 F.3d 1245, 1250 (11th Cir. 2015) (holding that Article III standing may be based on

6    the occupation of a fax recipient's phone line and fax machine); *see also Ira Holtzman*, 728 F.3d

7    at 684 (holding that the value of a fax recipient's time is a protected interest under the TCPA and

8    is sufficient to confer standing).

9            However, the Court finds that the doctrine of *de minimis non curat lex* contradicts

10   Plaintiff's contention that the harm is sufficiently particularized.  "The ancient maxims of *de*

11   *minimis non curat lex* and *lex non curat de minimis* teach that the law cares not about trifles."

12   *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007).  Further,

13   "systemic *rather than episodic*" unauthorized conduct "is sufficient to establish more than a de

14   minimis injury."  *In re Google, Inc. Privacy Policy Litig.*, No. 12-cv-01382 2013, WL 6248499, at

15   *7 (N.D. Cal. Dec. 3, 2013) (emphasis added).  The injuries that Plaintiff alleges here from the

16   one-line identifier on an episodic fax are of such a small degree as to constitute mere trifles.  *Cf.*

17   *Caldwell v. Caldwell*, 545 F.3d 1126, 1134 (9th Cir. 2008) ("[T]he alleged offense from the

18   content of one page out of 840 that one need not read or tarry over is fleeting at best . . . [and] is

19   too de minimis to satisfy the standing doctrine's core aim of improving judicial decision-making

20   by ensuring that there is a specific controversy before the court and that there is an advocate with

21   sufficient personal concern to effectively litigate the matter.") (internal citations and quotations

22   omitted); *cf. Hernandez v. Path, Inc.*, No. 12-cv-01515, 2012 WL 5194120, at *2 (N.D. Cal. 2012)

23   ("The specific harm caused by diminished resources of which Plaintiff complains is *de* minimus:

24   depletion of two to three seconds of battery capacity.") (internal quotations omitted); *see also*

25   *Quinshawnda Smith v. Aitima Medical Equipment, Inc.*, No. 5:16-cv-00339, 2016 WL 4618780, at

26   *6 (C.D. Cal. 2016) ("[A]ny drainage of battery from a single call is surely minimal."); *cf. Olmos*

27   *v. Bank of America*, No. 15-cv-2786, 2016 WL 3092194, at *4 (S.D. Cal. 2016) ("[D]iminished

28   mobile device resources, such as storage, battery life and bandwidth were insufficient allegations

United States District Court
Northern District of California

of injury to confer standing because the loss was de minimis.").  Accordingly, Plaintiff has not established Article III standing because the alleged injury is not sufficiently particularized.

### 2. Traceability.

Defendant contends that it does not qualify as a "sender" of the Subject Fax and that the alleged injury is therefore not fairly traceable to Defendant.  The definition of "sender" is codified as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent *or whose goods or services are advertised or promoted in the unsolicited advertisement*."  47 C.F.R. § 64.1200(f)(10) (emphasis added).

The Court finds that the one-line identifier promotes Defendant's services, placing Defendant directly within the code's definition of "sender."  Defendant argues that neither Congress nor the FCC intended to impose liability on an entity whose goods or services are advertised in a fax.  While the doctrine of *de minimis non curat lex* may lend some support for Defendant's argument, the contention is directly contradicted by the specific definition of "sender" provided in the code.  *See* 47 C.F.R. § 64.1200(f)(10); *see also Mohamad v. Palestinian Authority*, 132 S. Ct. 1702, 1709 (2012) (stating that Congress can legislatively override common law principles).  Accordingly, Defendant qualifies as a sender of the Subject Fax if it is construed as an unsolicited advertisement, regardless of the participation of the third party user in the transaction.

The Court finds that the alleged injuries are fairly traceable to Defendant's conduct.  Regardless, Plaintiff insufficiently alleges an injury in fact and the Court thus lacks jurisdiction.  Without subject-matter jurisdiction, the case must be dismissed pursuant to Federal Rule of Procedure 12(b)(1).  On this basis, the Court GRANTS Defendant's motion to dismiss the first cause of action.

### D. Conversion.

While Plaintiff alleges that Defendant converted its property through the transmission of the Subject Fax, the allegations do not indicate that Defendant had the opportunity to exercise control over Plaintiff's property.  "Conversion is the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  *Ananda Church of Self-*

*Realization v. Massachusetts Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1281 (2002) (citing Rest. 2d Torts, § 222A) (internal quotations omitted).

The Court finds that Plaintiff does not sufficiently allege that Defendant intentionally exercised dominion or control over Plaintiff's fax machine or that Defendant so seriously interfered with the right of Plaintiff to control its fax machine. Plaintiff admits that users of Defendant's service "have the option of attaching" Defendant's coversheets containing the one-line identifier, which negates a claim that Defendant intended to exercise control over or even could have exercised control over Plaintiff's fax machine. (*See* FAC ¶ 25.) Further, while Plaintiff correctly notes that property need not have monetary value to be converted, Plaintiff fails to recognize that "there may . . . be minor and unimportant dispossessions . . . which do not seriously interfere with the other's right of control, and so do not amount to a conversion." Restatement (Second) of Torts § 222; *see also Palm Beach Golf*, 781 F.3d at 1259 (holding that de minimis value of property does not negate a claim of conversion). Here, the Court finds that the alleged dispossession of Plaintiff's tangible and intangible property was so minor that it would not have seriously interfered with Plaintiff's right to control its property.

With the addition to its finding that the intrusion was not serious enough to amount to a conversion, the Court finds Plaintiff's allegations of an intentional and serious interference with its right to control its property to be facially implausible because Defendant's users—rather than Defendant—determined whether to use the optional cover sheet. Accordingly, the Court GRANTS Defendant's motion to dismiss the second claim for relief for conversion without leave to amend pursuant to Federal Rule of Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss without leave to amend. The dismissal of the amended complaint moots Defendant's motion to stay, which the Court accordingly DENIES. A separate judgment shall issue and the Clerk shall close

///

///

United States District Court
Northern District of California

9

the file.

**IT IS SO ORDERED.**

Dated: July 17, 2017

_____
JEFFREY S. WHITE
United States District Judge